The next case is Bouchard v. Olmstead. Good morning. If it pleases the court, I am Michael Bouchard, the appellant in this case. My case presents free speech biddens claims against the defendants and their individual capacities. They retaliated against me with respect to a letter that I sent to Attorney General Holder seeking his assistance. I also posted that letter on my website and I disseminated information pertaining to the letter via press releases and YouTube. The defendants engaged in an ongoing campaign of continuous free speech retaliation against me. Their message was clear, stop exercising your freedom of speech or else. So first what happened is they made an out-of-court electronic communication to my defense counsel demanding that I pull the letter down from my website. And my lawyer said to me, they are mad about it and they want the letter to come down. So by raising the hammer up against me, I felt threatened and I capitulated to that threat and I pulled the letter down from my website. After that, they hammered me by advising the probation officer that they wanted to have an obstruction of justice enhancement because they said that my letter obstructed justice. And that appeared in the PSR report. After that, they hammered me again by requesting the obstruction of justice enhancement in their sentencing memorandum. And then finally, at sentencing, Defendant Thompson hammered at me again. She attacked me for defending myself and she discussed my YouTube videos and my letter to Mr. Holder that was posted online. And then incorporated those things into a request for the court to impose a sentence on me that demonstrated to me the seriousness of my alleged conduct. Were you charged with the enhancement, the obstruction of justice enhancement in the PSR? It was contained in the PSR, but my recollection is that the probation officer, Ed Cox, indicated that acknowledged the government's request for it and I believe left it up to the judge to make that determination. Then the judge ultimately declined not to go with the obstruction of justice enhancement. I don't know if he did or not. Setting aside for a moment the conversation between your lawyer and the prosecutors at trial, why don't you have a problem here that it seems like core prosecutorial functions, even if done for a bad motive, still just core prosecutorial functions to advocate for a guidelines enhancement and to advocate in court with regard to a sentence? Well, the problems with the conduct is that the first instance where they made the first threat against me, that was an extrajudicial event. It was an electronic communication to my attorney out of court during the time period of that case, but totally unrelated to that case. They said, we want that letter to come down from your website, and my lawyer conveyed to me the fact that they were angry about it. So you don't deny that you were made aware of that request at or about the time that the prosecutors made it? It happened almost simultaneously. We were driving home from Syracuse and he contacted me on my cell phone and told me that. And you also don't deny that it was not until several years later that you brought this action based on that comment, at least in part? Well, that was the initial beginning of the threats, and then the other instances of the free speech violations were connected to that first instance. So I'm arguing that it is a continuous violation of my First Amendment with four different events all interconnected. With respect to the four instances of the chilling effect on my free speech, the Supreme Court had made it clear in the case of Hartman v. Moore that when a vengeful federal officer violates free speech, that person is subject to a damages remedy under Bivens. And then this court reiterated that doctrine in 2013 in the MES Inc. v. Snell case. And as recently as 2017, the U.S. District Court in Washington in Lumiere v. U.S. recognized that a plaintiff has a free speech Bivens claim. The government claims that this is a new context. I don't believe it is, but even if it is a new context, there are no alternative remedial measures that I can seek, and there are no special factors counseling hesitation and recognition of this Bivens claim. For me, it's damages under Bivens or nothing at all. Could you address the statute of limitations concern? The request about removing the letter to Mr. Holder came in 2012, I think, and yet you didn't file your action until 2017. I think that a three-year statute applies to Bivens claims. It does for the New York State three-year statute of limitations is applicable. Why wouldn't that bar your claim? Well, because that instance of demanding that I pull the letter down from my website was the beginning of the threat. They raised the hammer against me. I decided I'll capitulate. I'm going to pull that down from my website. I abided by their request, and thereafter, they continued to go after me regarding that letter. For example, the demand for the obstruction of justice, that actually is in defiance of the judicial branch. The Sentencing Commission was created by Congress as an independent agency of the judiciary, and the commentaries for the obstruction of justice enhancement that they sought specifically says, quote, this provision is not intended to punish a defendant for the exercise of a constitutional right. So the other instances related to obstruction of justice all fall within the statute of limitations, and they're connected to that first action wherein they threatened me. And what was the most recent action? At the sentencing where the prosecutor, again, mentioned my YouTube videos and my letter that was posted online despite the fact that I had already pulled the letter down from my website. So I'd like to just address the Second Circuit's case called Doe v. Phillips. In that case, this court ruled that when a prosecutor violates the freedom of religion clause within the First Amendment, he loses his shield of immunity. And according to the— That case is distinguishable, though. I mean, in that case, as I understand it, the prosecutor agreed to drop charges if the defendant participated in a religious ceremony. And the court said that while the decision whether or not to pursue charges is a core prosecutorial function, the sort of function for which you get absolute immunity, the prosecutor engaged in separate acts that were really distinctly outside of the realm. And here you might have something of that argument with regard to the conversation at the time of the trial, but every other action of the prosecutors does seem to be distinctly in the realm of what prosecutors do. Well, I don't believe that it's within the—I don't believe it's in the role of a prosecutor to defy the judicial branch by seeking an obstruction of justice enhancement that is specifically prohibited by the sentencing guidelines. With respect to your question about the distinguishing doe from this case, the Supreme Court makes it clear that freedom of speech occupies the highest rung of First Amendment values. So if a prosecutor can lose the shield of immunity for violating the freedom of religion clause in the First Amendment, a prosecutor can certainly lose the shield of immunity by violating the freedom of speech clause in the First Amendment. We'll hear from your adversary. You've reserved two minutes of rebuttal. Thank you. Good morning. May it please the Court. Karen Fulster-Lesperance, U.S. Attorney's Office for the Northern District of New York. For the defendants' appellees, Bouchard, Thompson, and Hartunian. The prosecutor's actions in this case are clearly covered by absolute immunity. However, this Court need not even reach that issue because no Bivens remedy should be implied under the facts and circumstances of this case. Neither this Court nor the Supreme Court has ever recognized an implied remedy for Bivens under First Amendment retaliation. And certainly in the wake of the Watershed Supreme Court case of Ziegler versus Abbasi, it is becoming increasingly clear that there is no implied remedy under Bivens for First Amendment retaliation. By my count, as of yesterday, there have been 73 decisions across the country, post-Abbasi, holding there is no Bivens remedy for First Amendment retaliation. Five of those come from three of your sister circuits, the Third, Sixth, and Ninth Circuit. On the flip side, only six courts, all district courts, have allowed a Bivens action to proceed alleging First Amendment retaliation. It is clearly a new context. The Supreme Court made that clear in Iqbal. My adversary cites Hartman v. Moore. There was no special factors argument. Of course, that was pre-Abbasi, but we had special factors. You know, the special factors language comes from Bivens itself. It seems to me more straightforward and breaking less new ground to consider the immunity aspects of this case rather than the protection of constitutional rights, if those are available. Now, there's a statute of limitations argument we've just seen alluded to about a continuing course of conduct and so on. But the actions that are complained of do, as my colleague suggested, seem to be quintessential prosecutorial functions. Is there, I mean, your adversary questions whether the complaint lodged to the attorney, his attorney, was a prosecutorial function, saying take the letter down. Could you address that concern? Absolutely, Your Honor. And in the first instance, my adversary made, Mr. Bouchard made several representations that he capitulated and took the letter down in 2012 when he was asked. The letter is still to this day viewable on YouTube. He may have taken it down off of his law firm's website. But it's, I looked at it on YouTube on the train down here for the argument. It is still publicly available, and it was never taken down. But is that as a result of Mr. Bouchard's actions, or is that just the way the Internet works? I honestly don't know the answer to that question, Your Honor. I know he was the one who posted it on YouTube. I presume that he had the ability to take it down, but I do not know that. But I guess his complaint would be that he was asked to take it down and that that oppressed his, restricted his First Amendment rights. Understood, Your Honor. So in terms of absolute immunity for the prosecutors here, there are four distinct acts alleged. Three of them are within the sentencing context, conversations between prosecutors and probation regarding the PSR and then the request for obstruction of justice enhancement within the PSR. I would note that the request for the sentencing enhancement was not based solely on the letter, but there were also allegations of false testimony and improper communication with witnesses during the trial. The district court judge, in fact, denied the enhancement, and Mr. Bouchard got a below-guideline sentence. What was the argument that the letter would have any bearing on an obstruction of justice enhancement? I mean, criticizing a prosecution in its commencement doesn't seem like obstruction of justice, does it? It doesn't, Your Honor, and I don't know what the rationale was. If you look at the transcript from the sentencing hearing, it was not argued at sentencing. It's a one-liner both in the PSR and in the government sentencing memorandum. It's not clear in the record what the rationale was, but it is quite clear from established case law that communications between prosecutors and probation, filings with the court relating to sentencing and arguing at sentencing hearings are core essential prosecutorial functions for which the prosecutor, regardless of the motive, is absolutely immune. Is there a document that makes clear that the court rejected the proposed obstruction of justice enhancement? Or you're just looking at what the court did in providing a below-guideline sentence? There's no discussion of it in the sentencing hearing. Ultimately, there was a below-guideline sentence. Had there been an enhancement, it would have been documented in the statement of reasons. Did the court indicate what the sentencing range was before imposing sentence? It did. It's math, so it would have been reflected in that range, no? The two-level enhancement, either, you know, what is the number that the judge reached? Presumably he put that on the record, and how did he get there? It is on the record in the sentencing hearing there was a range. There wasn't a specific discussion of how he got to that sentencing range. But the ultimate range, I believe, was started at? I have 87 to 108 months. Yes, and he got 48 months, ultimately. But again, the statement of reasons did not indicate an enhancement for obstruction of justice. The earlier communications about the letter during the trial, we would submit that those communications between a federal prosecutor and a criminal defense attorney during an ongoing criminal trial are intimately associated with the criminal judicial process. As we indicated in our brief, and I do recognize this was not argued below, but it's a purely legal matter. It's barred by the statute of limitations. It is also, if you, it's either part of the ongoing conduct or it's an independent act. If it's an independent act, it's not only barred by the statute of limitations, but it's not a retaliatory act. The allegation there is that the prosecutor said to his attorney that they were, quote, mad about the letter and, quote, wanted it taken down. There was no threat that something bad is going to happen if you don't take it down. There was no, it didn't even say they asked for it to come down. They just said they were upset about it and wanted it off the website. Why is that unclear? Separate and apart from, for instance, the Doe case where the prosecutor says, if you go into court and swear in a Bible as to your innocence, I'll not prosecute you or I'll dismiss the charges. There's no quid pro quo there. They didn't say we'll dismiss the charges if you take the letter down. They didn't say we're going to do a parade of terribles if you don't. It's the government's position that in the absence of a court order, which I assume that there was an absence of a court order, directing the defendant and the defense lawyer what they can and cannot say in public is proper? No, I'm not suggesting that at all. But we don't know what the actual conversation was between the prosecutors and the defense counsel. That's not in the record. But what was communicated to Mr. Brouchard from his attorney was simply that they were upset about the letter and they wanted it off the website. There wasn't a retaliatory act or the threat of a retaliatory act associated with that. But, again, these communications clearly occurred between prosecutor and defense counsel within the context of an ongoing criminal trial, and the prosecutors would be absolutely immune for that conduct. Thank you. Thank you. Thank you. With respect to the conduct of the defendants being prosecutorial functions, in the lower court I posed the question in my opposition papers, what is a prosecutorial function? The lower court never performed the functional approach that's required by the Supreme Court under Forrester v. White. So if we see what a prosecutorial function is, it relates to what cases to bring that would be deciding to evaluate whether or not to pursue an indictment. And then the second aspect of it would be how to prosecute the case that's already been brought. So if you're alleging A, B, and C within an indictment at trial, your actions must relate to prosecuting A, B, and C. Everything that the government did, the four connected instances of violating my free speech, had nothing to do with the indictment. It had nothing to do with A, B, and C. Instead, it was all encompassed within D. The prosecutorial function doesn't end when the jury renders its verdict. Prosecutors are entitled to advocate a particular position at sentencing, and in that context are not limited to the facts that were adduced at trial. At sentencing, prosecutors can ask the judge to look at your entire life and take everything that you've done into consideration. That is true. That's why there's an interview for the PSR report. But the one thing I indicated in my reply brief is that the PSR report, unfortunately, my defense counsel made no objections to that. But the fact that the sentencing involved a reiteration of the letter that I did take down from my website and it never went back up on my website and it involves punishing me with an obstruction of justice enhancement that is strictly prohibited by the sentencing guidelines. So no matter what, the government cannot seek that obstruction of justice enhancement, and in all instances, my speech was totally silenced. Even after I capitulated to the first demand, they still came after me three more times. Thank you both for your argument. Thank you. And we'll take the matter under advisement.